IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| MARY BETH WHITE, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | Case No. CIV-16-1265-D |
| UNITED STATES OF AMERICA, | ) |  |
| Defendant. | ) |  |

# **O R D E R**

This matter is before the Court for disposition of Defendant United States' Motion to Dismiss [Doc. No. 11] under Fed. R. Civ. P. 12(b)(1). By Order of October 17, 2017, the Court found that the existing record was insufficient to permit a determination of whether subject matter jurisdiction exists over Plaintiff's action against the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671-80, and authorized limited jurisdictional discovery and additional briefing. Plaintiff has filed a supplemental brief [Doc. No. 17], and Defendant has responded [Doc. No. 18]. Thus, the Motion is fully briefed and ripe for decision.

**Factual and Procedural Background**

The Court assumes the reader's familiarity with the October 17 Order [Doc. No. 14]. Briefly, this action concerns Plaintiff's personal injuries from a slip-and-fall accident at a United States Postal Service ("USPS") facility in Newalla, Oklahoma, on November 12, 2013. The accident occurred inside the facility where a worker employed by USPS was wet-mopping the floor in an area open to customers. With its Motion,

Defendant presented evidence to show that the individual performing the mopping work was a USPS contractor, Patrick Ryan. Plaintiff disputed that Mr. Ryan was an independent contractor rather than an employee, and argued that "USPS employees other than the cleaning person may also be responsible for the condition of the premises." *See* Pl.'s Resp. Br. [Doc. No. 12] at 11. At that point in the case, however, the available evidence was simply the written contract defining the relationship between USPS and Mr. Ryan.

In this Order, the Court continues the analysis stated in the October 17 Order, applying the same standard of decision. For ease of discussion, the Court will recap the prior evidence, and then summarize new evidence submitted by the parties after conducting discovery. Unfortunately, despite the parties' efforts, Mr. Ryan has not been located. Defendant reports: "It is believed that Mr. Ryan moved out of state after the incident," and it is possible he is deceased. *See* Def.'s Resp. Br. at 1-2. The only available witnesses are two USPS employees: David Unsell, who was the officer in charge ("OIC") of the Newalla post office in April 2013 when Mr. Ryan began working; and JoeJean Danker, who was the Newalla OIC in November 2013 when the accident occurred. Plaintiff deposed both of these individuals, and the parties have submitted excerpts of the deposition transcripts.[1]

### Summary of the Evidence

Invoking the independent contractor exception to the FTCA's waiver of sovereign immunity, Defendant previously provided a written "Cleaning Services Agreement"

---

[1] Plaintiff did not submit copies of the transcripts but, instead, compiled exhibits by copying portions of the transcripts into separate documents. *See* Pl.'s Suppl. Br. [Doc. No. 17], Ex. Nos. 2-9. However, Defendant provided copies of the pertinent portions of the transcripts as exhibits to its response brief. *See* Def.'s Resp. Br. [Doc. No. 18], Ex. Nos. 1-2.

between USPS and Mr. Ryan as a "self-employed individual" and a "supplier" of commercial cleaning services. *See* Mot. Dismiss, Ex. 2 [Doc. No. 11-2] (hereafter, the "Contract") at 1.[2] The Contract is a USPS form agreement that was used to engage Mr. Ryan as a "contract cleaner" for the Newalla facility, executed on behalf of USPS by Mr. Unsell. *Id*. The Contract authorized bi-weekly payments to Mr. Ryan by check at an annual rate for a 12-month period; it expressly provided that USPS would "not withhold taxes or take any other deduction from these payments." *Id*. at 2. It stated regarding federal taxes: "Supplier payment information is reported to the Internal Revenue Service via IRS Form 1099." *Id*.

The Contract expressly provided, in pertinent part: "The supplier agrees and acknowledges that he/she is performing this service as an independent contractor and not an employee of [USPS], for any purpose, and that the terms of this agreement shall not be construed to create any further relationship between the parties other than an independent contractor status." *Id*. at 2. The Contract made the supplier "responsible, without additional expense to [USPS], for obtaining any necessary licenses or permits, and for complying with any applicable . . . laws," and "responsible for all damage to person or property . . . that occurs as a result of its omission(s) or negligence." *Id*. The Contract also provided: "The supplier must take proper safety and health precautions to protect the work, the workers, the public, the environment, and the property of others." *Id*. ("Clause B-30").[3]

---

[2] The parties have also submitted copies of the Contract with their supplemental briefs.

[3] Based on this provision, Defendant argued in support of the Motion that USPS contractually delegated its safety responsibilities (including a duty to warn of any hazard) to

3

The Contract included an indemnity provision: "The supplier will hold harmless and indemnify [USPS], and its officers, employees, agents, and representatives, from all claims, losses, damages, actions or causes of actions resulting from the negligent acts or omissions of the supplier, his/her agents, employees, or representatives." *See* Contract at 2.

The Contract described the services to be provided as follows: "Cleaning services will be of the kind and quality offered and sold in the commercial marketplace under commercial terms and conditions. [USPS] reserves the right to reject any work it finds unsatisfactory." *Id*. The Contract provided regarding equipment: "Unless otherwise agreed, [USPS] will provide reasonable quantities of cleaning equipment and supplies." *Id*. The Contract authorized USPS to terminate the agreement "for cause if the supplier fails to perform all of the services required by the contract, or fails to maintain appropriate standards of personal conduct while on [USPS] premises." *Id*. Otherwise, the Contract could be terminated by either party by giving 30 days' written notice.

Mr. Unsell testified that he obtained permission from USPS to hire a contract cleaner when he became OIC of the Newalla facility, and that he explained the duties of the position to Mr. Ryan as "sweeping, mopping, [and] doing basic general cleaning." *See* Unsell Dep. 11:4-10. Mr. Ryan was required to perform his work during office hours while customers might be present; he did not have a key to the facility. When he came to work, "[h]e would ring the bell and be allowed access by whomever answered the door." *See* Danker Dep. 19:16-19. Mr. Ryan was issued a badge to be worn while cleaning; the badge

---

Mr. Ryan. *See* Mot. Dismiss [Doc. No. 11] at 11. Plaintiff did not dispute USPS's discretion to delegate safety matters to a contractor, if that was Mr. Ryan's role. *See* 10/17/17 Order at 4, n.3.

4

identified him as a person who was authorized to be in all areas of the facility, unlike customers who were prohibited from entering certain areas. The Newalla post office "was always busy. So [Mr. Ryan] did his best to clean where he could, when customers were not there or not immediately there." *Id*. 34:23-25.

Mr. Ryan performed cleaning tasks on an "as-needed basis" and in any order he chose, except he was expected to clean toilets every day he worked. *See* Unsell Dep. 19:2-10. Mr. Unsell informed Mr. Ryan at the beginning of the Contract what duties he was to perform and gave him general directions, such as to "make sure there's no fingerprints on doors." *Id*. 18:24-19:2. Mr. Unsell also made clear that Mr. Ryan would be required to do satisfactory work. *Id.* 19:15-19. Mr. Ryan's performance of cleaning tasks was not documented by any checklist or paperwork of any type.

Mr. Ryan's work hours were not directly controlled, routinely monitored, or tracked, but "it was a small enough office that [employees] knew whether he was there or not." *See* Unsell Dep. 27:24-28:1. Unlike Mr. Ryan, USPS employees were required to clock in and out, and rural mail carriers logged their hours on time sheets. The Contract did not specify a number of hours or days that cleaning services would be provided, but both Mr. Unsell and Ms. Danker testified that Mr. Ryan was expected to work two or three days per week for a total of nine hours "depending on the personal needs of his own schedule." *See* Danker Dep. 18:24-19:1. If he needed to adjust his typical working hours or days for a week, he simply informed the OIC. *Id*. 36:11-21; Unsell Dep. 3-23. The OIC did not have authority to change the number of hours or the payment received under the

Contract; USPS determined those matters based on the size of the facility. *See* Danker Dep. 20:8-21:2.

Regarding floor maintenance and equipment, Mr. Unsell and Ms. Danker testified that USPS provided brooms, a mop, a bucket and wringer, and cleaning supplies. The mop bucket had warning signage on it, but no other warning signs were provided for mopping work. The Contract's provision for "reasonable" quantities of supplies was implemented informally. As stated by Ms. Danker, "when you're close to out of something, you reorder it." *Id*. 26:17-20. A USPS employee with computer access would order supplies as needed to keep items in stock. Mr. Ryan determined when to mop the floors and how to do it safely, but the OIC could supervise and direct his work if it was not satisfactory.

## Discussion

The parties agree on the legal standard governing the issue of Mr. Ryan's status:

[T]he "critical question" in determining whether an individual is a federal employee or an independent contractor for purposes of the FTCA is "whether the federal government has the power to control the detailed physical performance of the individual." *Duplan v. Harper*, 188 F.3d 1195, 1200 (10th Cir. 1999). Under this "control test," we must determine whether the government supervises the individual's day-to-day operations. *Id*. . . . [O]ur inquiry involves consideration of a number of factors, including:

> (1) the intent of the parties; (2) whether the United States controls only the end result or may also control the manner and method of reaching the result; (3) whether the person uses his own equipment or that of the United States; (4) who provides liability insurance; (5) who pays social security tax; (6) whether federal regulations prohibit federal employees from performing such contracts; and (7) whether the individual has authority to subcontract to others.

*Tsosie v. United States*, 452 F.3d 1161, 1163-64 (10th Cir. 2006) (quoting *Lilly v. Fieldstone*, 876 F.2d 857, 859 (10th Cir. 1989)); *see* 10/17/17 Order [Doc. No. 14] at 7.

Some necessary facts to evaluate the pertinent factors are established by the terms of the Contract. The Contract plainly expressed the intent of the parties that Mr. Ryan was performing cleaning services as an independent contractor and not an employee of USPS. It expressly required USPS to provide Mr. Ryan's cleaning equipment and supplies. The parties agree that USPS employees were not prohibited from performing cleaning work. Mr. Unsell testified that he obtained authorization to hire a cleaner because he did not want to do such work.

The Contract implicitly required Mr. Ryan to pay his own social security tax, by stating that no taxes would be withheld from his payments. The Contract was silent concerning liability insurance, but it made Mr. Ryan responsible for damages caused by his negligence and obliged him to indemnify USPS for any claims, losses or causes of action resulting from his negligence. A reasonable inference to be drawn is that Mr. Ryan could elect whether to buy liability insurance to protect himself from any financial responsibility or loss. Mr. Unsell understood liability insurance "was optional" for Mr. Ryan. "It was up to him. If he wanted [insurance], he could get it. If he didn't want it, that was on him." *See* Unsell Dep. 26:2-6. There is no evidence Mr. Ryan had liability insurance.

The Contract also did not directly address subcontracting. However, it did not prohibit the practice and anticipated that it might occur by including a provision that "the supplier and any subcontractor must pay employees engaged in performing the work on

7

the contract at least the minimum wage" required by federal law. *See* Contract at 2 ("Clause 9-11"). Again, a reasonable inference is that Mr. Ryan could elect whether to perform the cleaning services himself or subcontract the work.

The primary question thus becomes whether USPS controlled only the end result of Mr. Ryan's cleaning work or also controlled the manner and method of reaching the result. Clearly, the Contract authorized USPS to inspect Mr. Ryan's work for compliance with commercial cleaning standards and to reject any work that it deemed unsatisfactory. Plaintiff contends the testimony of Mr. Unsell and Ms. Danker shows that USPS could control the manner and method by which Mr. Ryan did his work. Plaintiff argues that USPS employees at the Newalla post office exercised supervision or control over day-to-day operation of Mr. Ryan's cleaning services because they controlled his access to the building, his general work schedule, and his equipment and supplies (including a warning sign only on the mop bucket); they assigned cleaning tasks and instructed him how to perform them; and they decided whether his work was satisfactory. For example, if the OIC had determined that Mr. Ryan was not mopping the floor properly (such as leaving too much water on the floor), the OIC could have corrected him. *See* Danker Dep. 51:2-8.

Plaintiff relies on two cases to support her position that Mr. Ryan was a federal employee under these facts. The Court finds neither cited case to be particularly helpful.

In *Cupit v. United States*, 964 F. Supp. 1104 (W.D. La. 1997), a customer tripped on a rolled rug and fell while exiting a post office, and one question presented was whether the allegedly negligent worker who had moved the rug to clean the floor was a postal employee. The facts included that the post office had another janitorial worker hired

8

through a written contract; the floor cleaner was hired by the local postmaster under an oral agreement to strip, wax, and buff the floors; the cleaner provided his own equipment; he was paid for the job each time he worked; he did not have keys to the building but was granted access by a supervisor when he arrived to work; and postal employees usually locked the front doors while he was cleaning lobby floors and posted warning notices when he worked. Applying the Fifth Circuit's "daily-detailed-control" test (*id*. at 1110), and treating the government's motion as one for summary judgment, the district court found that disputed facts prevented dismissal of an FTCA negligence claim based on the cleaner's conduct because the question of his employment status could not be determined as a matter of law. *Id*. at 1111. Specifically, "[m]uch of the dispute as to the authority of the Post Office to control the detailed, daily, physical performance of [the cleaner] arises from the fact that the contract in this case was oral," and the parties "disagree[d] as to its terms." *Id*.

In *Resendez v. United States*, No. 92-15259, 1993 WL 173706 (9th Cir. May 24, 1993) (unpublished), a customer slipped and fell due to the alleged negligence of a janitor who was mopping the lobby floor of a post office. The court of appeals reversed the district court's dismissal of the plaintiff's FTCA negligence claim for lack of jurisdiction, based on an appellate finding that the janitor was a federal employee. Some of the facts on which the court of appeals relied for this finding are similar to the facts of this case, but some are different, particularly the absence of a written contract for a specific term or project. "Such contracts are common in other cases where individuals were held to be 'independent contractors.'" *Id*. at *3 (citing cases). Distinguishing those cases, the court observed:

9

> Morales [the worker] was hired as the Post Office's janitor for an indefinite period, which lasted continuously for over five years. Moreover, Morales was paid hourly, rather than by task. Finally, Morales worked solely on the Post Office's premises while performing his duties. *Cf. Lerma v. United States*, 716 F. Supp. 1294 (N.D. Cal.1988), *aff'd*, 876 F.2d 897 (9th Cir. 1989) (part-time driver of transportation corporation who contracted with U.S. Postal Service to deliver mail was not a federal employee under FTCA). The district court's conclusion that Morales was an independent contractor of the U.S. Post Office was based on the fact that [Postmaster] Sparrow did not routinely give Morales specific instructions. *See Logue* [*v. United States*, 412 U.S. [521] at 527-28 [(1973)]; [*United States v.*] *Orleans*, 425 U.S. [807] at 815 [(1976)]. In *Logue*, the Supreme Court explained that the distinction between a servant relationship and that of an independent contractor "turn[s] on the absence of authority in the principal to control the physical conduct of the contractor in performance of the contract." *Logue*, 412 U.S. at 527 (emphasis added) (citations omitted). If the United States has the authority to control the detailed performance of the individual's day-to-day operations, the individual is a federal employee. *See id.* at 527-28; *Orleans*, 425 U.S. at 815. Postmaster Sparrow clearly had the authority to control and supervise Morales's day-to-day activities. In fact, Sparrow exercised this authority whenever necessary. Morales was, therefore, an employee of the U.S. Post Office at King City.

*Resendez*, 1993 WL 173706 at *3.

In contrast to *Cupit* and *Resendez*, USPS had a written contract with Mr. Ryan. The parties' intent that Mr. Ryan would perform cleaning services as an independent contractor was clearly expressed in the Contract. In the Court's view, Plaintiff has failed to identify sufficient facts to establish that, despite the parties' intention, the Contract was performed in a way that created an employment relationship and Mr. Ryan actually was an employee.

While Mr. Ryan was expected to work two or three days a week for a total of nine hours and to perform his cleaning services during office hours, Mr. Ryan's time was not directly monitored or controlled; he could decide what days and hours to perform his work. Each day he worked, Mr. Ryan was expected to clean toilets and do routine cleaning tasks

that were identified by USPS's representative, the Newalla OIC, when the Contract began. However, no USPS employee supervised Mr. Ryan while he was cleaning, and Mr. Ryan determined his own work plan and schedule of cleaning activities. His performance was not documented or recorded in any way. While the Contract authorized the OIC to inspect his work and demand satisfactory performance, the standard of performance was set by the Contract: "Cleaning service of a kind and quality offered and sold in the commercial marketplace under commercial terms and conditions." *See* Contract at 2. Also, the OIC could not alter the number of Mr. Ryan's work hours or the amount of his payment.

Further, while Mr. Ryan was not required to have liability insurance, and probably did not have insurance, his responsibility for safety matters and any claims or injuries related to his cleaning services was plainly stated in the Contract. USPS did not agree to assume such liability. The USPS was required to provide Mr. Ryan's equipment and supplies and supplied only a warning sign on a mop bucket, but there is no evidence that Mr. Ryan deemed this signage insufficient to satisfy his duty to safely perform his work or that he asked USPS to provide different or additional signs for his use while mopping. No USPS employee instructed Mr. Ryan how to perform his work. In short, the Court finds insufficient indicia of an employment relationship between USPS and Mr. Ryan to overcome the contractual requirement that he perform the work as an independent contractor.

This finding is consistent with the decisions of other courts called to determine the effect of the USPS "cleaning services agreement" upon janitorial work performed at post offices. In *Pace v. United States*, Civil Action No. 07-3882, 2008 WL 4559598 (D. N.J.

Oct. 9, 2008), a district court ruled that a customer injured in a slip-and-fall accident on a wet-mopped floor at a postal facility failed to show that USPS retained sufficient control over the cleaning services contractor to overcome the independent contractor exception. The same form of contract was utilized (*see id.* at 1), but unlike this case, the contract also included "a pre-printed form to suggest what locations, times, and days the cleaning should occur." *Id.* at 2.[4] The court found that the inclusion of a schedule of cleaning work to be done, the delegation of safety responsibilities without requiring liability insurance, the right to reject unsatisfactory work, and the provision of cleaning supplies and equipment, were "insufficient to overcome the overwhelming indications, contractual and otherwise, that [the contractor] was in fact an independent contractor." *Id.* at 3. Because the plaintiff failed to show that USPS retained control or supervision over daily cleaning services, the court found that FTCA's independent contractor exception applied. *Id.* at 4.

In contrast, a court of appeals determined in *Johnson v. United States*, 132 F. App'x 715 (9th Cir. 2005) (unpublished), that the independent contractor exception did not apply to a USPS contractor whose cleaning work was controlled on a day-to-day basis by the local postmaster. According to the appellate court:

> The great weight of the evidence indicates that the USPS dictated every aspect of [the worker] Hill's daily employment activities. Her duties were listed on a chart and left virtually no discretion as to how she was to perform her job. The directions as set forth on the chart and in the contract's scope of work were so detailed as to direct how many times to turn a mop over, as

---

[4] Also unlike this case, the contractor in *Pace* was "Lotty's Cleaning Services," which suggests a cleaning company. *See id.* at 1. However, the named defendants included this entity and an individual, Lotty Otarola. The nature of the business entity, whether a sole proprietorship or other form, is not identified in the opinion. The opinion states that the contractor did not have liability insurance and had not appeared in the case. *Id.* at 4 n.4.

12

well as when and how to place safety signs. Moreover, the local postmaster also directed Hill where to clean on a day-to-day basis.

*Id*. at 716. Under these circumstances, the Ninth Circuit reversed the district court's dismissal of the case for lack of jurisdiction, stating as follows:

> The relevant inquiry is whether, despite her contractor status, the USPS exercised substantial control over Hill's daily activities. As to that question, the evidence overwhelmingly favors Plaintiff. Reviewing the matter de novo, we find that the USPS exercised substantial control over Hill so as to render the contractor exception to the FTCA inapplicable.

*Id*. No facts presented in this case suggest that a similar degree of control was exercised over Mr. Ryan's work at the Newalla post office.

Further, the Court finds helpful guidance from the Tenth Circuit in *Curry v. United States*, 97 F.3d 412 (10th Cir. 1996). In *Curry*, the plaintiff was injured in a motorcycle accident allegedly caused by the negligent operation of a road grader by a contractor of the United States Forest Service ("USFS"). The alleged tortfeasor, Joe Roybal, was a road-grader operator who was hired to maintain a section of road by performing work specified in a purchase order. USFS required his work to meet certain specifications, and USFS employees were responsible for monitoring the work, issuing orders to suspend work or redo unsatisfactory work, and authorizing periodic payments. The court of appeals affirmed the district court's determination that Roybal was an independent contractor because "USFS monitored his activities to the extent necessary to ensure that the desired results were achieved, but it otherwise gave Roybal discretion in choosing how to perform the contract." *Id*. at 415. Similarly in this case, USPS had a right to supervise Mr. Ryan's

activities to ensure his satisfactory performance of the Contract, but USPS did not control or direct Mr. Ryan's day-to-day cleaning services in a way that made him an employee.

For these reasons, the Court finds that Plaintiff has failed to establish that her alleged injuries were caused by the negligence of a federal employee. Accordingly, the Court finds that Plaintiff's negligence claim against the United States does not fall within the FTCA's waiver of sovereign immunity.

**Conclusion**

Therefore, the Court finds that it lacks subject matter jurisdiction over Plaintiff's tort action against the United States.

IT IS THEREFORE ORDERED that the United States' Motion to Dismiss [Doc. No. 11] is GRANTED. A separate judgment of dismissal for lack of jurisdiction shall be entered.

IT IS SO ORDERED this 18th day of May, 2018.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE